May it please the Court, my name is Greg Wallace and I represent Jeffrey Walker in this Social Security Disability Appeal. Mr. Walker is a 44-year-old man who is unable to work due to chronic neck and back pain primarily. He has a number of other ailments as well. We are here for two reasons. Number one, the ALJ failed to discuss or even mention a very important limitation that was placed on Mr. Walker by his treating doctor, Dr. Thacker. Dr. Thacker has treated Mr. Walker since November of 2013 and his treatment notes in September 2014, he stated that Mr. Walker was unable to bend backward or forward due to severe spine disease. He separately restricted Walker from working with machinery where he is required to bend forward or to lift any weight. Now, there is ample medical evidence supporting Dr. Thacker's restriction here. The MRIs, particularly the May MRI of Mr. Walker's cervical spine shows severe neuro-foreminal stenosis, that is compression of the spinal nerves as they leave the spinal canal. He also had multiple bulging discs, degenerative disc disease, and combined with Dr. Thacker's clinical observations, limited range of motion, numbness and loss of grip in his upper extremities, positive straight leg raisings, and impaired gait due to pain, Dr. Thacker's restriction here is well supported by both objective and clinical evidence. ALJ never mentioned these restrictions nor explained what weight he was giving to Dr. Thacker's opinion. Well, he does say claimant's alleged limitations are inconsistent with the medical evidence. I left out of neck and back pain. Go ahead. Go ahead, Professor. Right. Well, certainly that's what the ALJ said, I mean, that's what he determined ultimately, but he never specifically addressed this particular limitation. And the commissioner's regulations and the law of this circuit require that an ALJ always give good reasons for the weight given to a treating doctor's opinion. And here, the ALJ gave no reasons because he never mentioned this particular restriction. Now, this restriction is important. And the commissioner agrees that this could be error here, but the commissioner says, well, it's harmless error. I don't think so. And there are two reasons. First of all, there's no basis in the record for this court to say, you know, well, the ALJ would have or would not have credited this particular restriction when it comes to the inability to bend forward or backward. The ALJ did put in his RFC assessment a restriction on or a need for alternating sitting and standing and limited him to, Mr. Walker, to sedentary work. There's no basis in the record for predicting whether the ALJ would have credited this statement had he considered it. Now, I don't know whether he ignored it or whether he overlooked it or what. So, restriction to sedentary work, by its own nature, by the nature of that limitation, does that include a limitation on bending and lifting? No, I don't think it does. And I'll tell you why. And these are two citations that I didn't put in our brief, and I'd be happy to file a Rule 28J letter on this. But Social Security Ruling 8515 defines stooping as bending from the spine alone, okay? Then you come forward to Social Security Ruling 96-9P, which states that the complete inability to stoop significantly erodes the sedentary occupational base, so a finding of disabled usually applies. Now, that ruling also talks about the need for getting vocational expert testimony as to the effect, the precise effect of that limitation on the sedentary occupational base. And that brings me to the second reason why this is not harmless error. And that is that there's no basis in the record for determining what the VE's testimony would have been had she been presented with this particular limitation. Had the ALJ put in his RFC assessment and the hypothetical question that was based on that assessment, he can't bend forward or backward. He's unable to stoop. And then have the VE consider that limitation and its effect on sedentary work. And essentially, the commissioner is asking this court to come in and make the judgment, first of all, as to whether the doctor would have credited, and second is whether the VE would have, what the VE would have said on this. And in that respect, this is just simply not harmless error. Now, when you add this error to the very thin evidence supporting the ALJ's decision in this case, then I think certainly a remand is necessary here. The ALJ relied mainly on, first, the opinion of Dr. Marinoff, who was a neurosurgeon who saw Mr. Walker one time to evaluate whether he needed back surgery or not. Now, there are some inconsistencies with what Dr. Marinoff said and what the objective medical evidence showed. For example, Dr. Marinoff said that the MRI of Mr. Walker's cervical spine MRI was near normal. And yet, the report of that MRI says there was severe stenosis at C4 and C5 and at C5 and C6. So the ALJ never addressed that inconsistency and resolved that before relying on Dr. Marinoff's opinion. Additionally, there is a notation in the record attached to one of those reports that Dr. Thacker, his treating doctor, believed that the stenosis at C4 and 5, the severe stenosis, was what was causing his neck and shoulder pain. So again, there's no addressing, since the ALJ never addressed Dr. Thacker's opinion on this point. He never resolved the apparent inconsistency between. And you can't resolve it just by saying, well, Dr. Marinoff's a neurosurgeon and Dr. Thacker's a family doctor. They're both trained physicians. And it's not enough to just simply say, as the commissioner now does, well, Marinoff's a neurosurgeon, so he knows, and Dr. Thacker apparently doesn't. What does it mean when Dr. Marinoff says significant degenerative disease and then later, diffuse discomfort? What does all that mean? How do you read that? He was referring there to the disease in Mr. Walker's lumbar spine rather than his cervical spine. L4, L5. Yes, L4, L5. And so he, and this is another point I do want to make about Dr. Marinoff. I don't think that Dr. Marinoff's single report necessarily supports the ALJ's decision. All Dr. Marinoff said is that, yeah, there's significant problems with his back. But because his pain complaints, he's complaining of diffuse pain, which, pain all over. And it's not a focal pain, then it's unlikely back surgery would help him. So that's all. And he recommended physical therapy and pain management. Now, the commissioner wants to make much of this as describing as conservative treatment. And really what this is, when the commissioner talks about conservative, is non-surgical treatment. Now, the commissioner can't point to any law or any regulation where it says that people have to have surgery in order to be found disabled. So people can be treated for severe disabling back pain and not require surgery. And in this particular case, Dr. Marinoff recognizes that Mr. Walker is suffering pain, so much so that he recommends that he goes to pain management. What about the fact that he twice says neck has full range of motion without tenderness? It's there twice, the same words. Exactly. And that was a single instance. There are multiple instances in which Dr. Thacker, who regularly examined Mr. Walker, found limited range of motion in his spine, his neck, his upper, his cervical spine, and everything. So that's another inconsistency that the ALJ never addressed there. But he just simply relied on Dr. Marinoff's opinion as supporting his decision here. Now, the ALJ also relied on medication non-compliance. And I think we've addressed this in our brief, so I'll just be short on this. The medication non-compliance that we see in Dr. Thacker's notes had to do only with Mr. Walker's hypertension and diabetes medication. There was never, ever any reference in Dr. Thacker's notes that Mr. Walker was non-compliant with his pain medication. So if you're not taking your diabetes medication, does that mean that you don't have back pain? Well, I don't think so. But nevertheless, the record shows that Mr. Walker's compliance was good from late 2014 into 2015 and into 2016. So this is not a long history of medication non-compliance in this case. And we would submit that simply being non-compliant with hypertension or diabetes medications doesn't form a basis for the ALJ to discredit the pain that he suffered. You can help me, because the ALJ refers to several different citations in the record. I don't even know what they mean, to tell you the truth. But where he talks about non-compliance with medications. Are you telling us that all of those will deal with hypertension, diabetes, and dyslipidemia? In other medications, there is never a... And in fact, in some of those instances... None of those deal with pain. That's my question. He says that he's compliant with his main pain medication. Okay. Thank you. So there's no place in there where he says he's not compliant with pain medication. No place at all, right, Professor? No place at all. Not that I've found or can remember. Oh, thank you. Go ahead. In that regard. So with the thin evidence on the one hand and this non-harmless error of not addressing, not even mentioning this very important restriction, this relevant restriction by his treating doctor, we just simply ask this court to remand the case for proper consideration of Mr. Walker's claim. Thank you, Your Honor. Thank you. Ms. McGeehan. May it please the Court. My name is Una McGeehan, and I represent the Acting Commissioner, Nancy A. Berryhill. I'd like to begin by addressing plaintiff's first argument that the ALJ failed to discuss Dr. Thacker's opinion. The ALJ specifically mentioned Dr. Thacker's opinion, discussed his treatment notes, and references the very exhibit number in his decision. So it's clear that the ALJ did consider Dr. Thacker's opinion. Does that include the opinion about the bending, limitation on bending forward or lifting? Yes, Your Honor. It's on page 34 of the ALJ's decision. He references the September 2014 treatment note. Wait, Counselor, you said 34. Mine's only 13 pages long, so help me. The ALJ's opinion is only 13 pages. At the top it says page 7 of 13 and page whatever. Well, let's see. I have the decision. I can point you to it. I think it might be different of the numbering. According to my page number, it's on page 34, which would be. That's probably the administrative record number. Yeah, it's on page 8 of the ALJ's decision. Thank you. Yes. And also I. . . Okay. Now, just to help me out, where on page 8 is that referred to? Yes. On page 8, it's. . . If you look at about halfway down the page, he refers to in September 2014 claim that reported to Dr. Thacker, and he references exhibit 11F, page 2. That's the treatment note in question. And if you look at the actual treatment record, it's important to look at there's actually two parts that you need to look at. One is the first part where he said patient is unable to bend forward or backward considering his severe spine pain. But the concluding portion of that treatment note on the next page, on page 564, the takeaway portion where it says plan of care notes, if you look carefully, it's inartfully worded, but what he says is patient is restricted to work with machinery where he would be required to bend forward or lift any weight. And in this case, the jobs that the ALJ found plaintiff can perform are sedentary work, the surveillance system monitor and telephone operator or telephone order clerk. Those jobs do not require working with machinery or bending. So you think that where the ALJ specifically makes reference of the report by the doctor of neck swelling and pressure with pain in cervical, thoracic and lumbar spine, that carries with it everything else that the doctor mentioned and that we are assured from that that the ALJ actually considered the rest of the treating physician's observations and opinions? Yes, Your Honor. As I note in my brief, the ALJ is not required to discuss every piece of medical evidence, and it's important to note that the ALJ considered all of Dr. Thacker's treatment notes, not just this one page. He considered his later treatment notes where he, in fact, directed plaintiff to engage in cardiovascular exercise. That was in the very month after this one, in October of 2014. This court has noted that simply by not citing to a piece of evidence doesn't mean that the ALJ didn't consider it. And in this case, it's clear he considered it because he mentions Dr. Thacker by name. He mentions the very exhibit number simply because he didn't mention a sentence out of a treatment note does not mean that he did not consider Dr. Thacker's opinion. Counsel, I'm with you now on page 8, and you look at the third sentence, which is right after the one you quoted. It says the claimant has full range of motion without tenderness and full motor strength. It leaves the word neck out. Every time he says, and he says this two or three times, Marinoff does, in the same words, it says full range of motion in the neck. Isn't that what he's talking about? Yes. So see, the ALJ exaggerates one way this way and forgets the other stuff. Do you think that's a proper weighing of the evidence? Yes, Your Honor. If you look at it closely, he's referring to two different doctors. He's referring to Dr. Thacker and Dr. Marinoff. I got that. Go ahead. And he's recounting what Dr. Marinoff found. The ALJ is not required to do an exhaustive discussion. Yeah, but you see what I'm saying? Because it says full range of motion without tenderness and full motor strength. It doesn't say neck, and the previous sentence says neck and back pain. Right. And the normal contextual reading of that is it refers to both, counsel. Trust me. Okay? Okay. So that's misleading. Isn't that third sentence misleading? Well, they're talking about neck pain versus lumbar spine pain. It's not. It's two different areas. It's two different medical reports. Well, you agree it's ambiguous. The claimant has full range of motion without tenderness and full motor strength. The previous sentence says neck and back pain. And the next sentence talks about thoracic. Yes. It might not be perfectly clear, but they're two different reports. So they're two different doctors having two different observations. That's ambiguous. Yes. Well, then from the ALJ's written decision, where do we find the ALJ's reasoning for not including the limitation on bending forward and lifting weight in his determination of the residual functional capacity and his formulation of his hypothetical question? Where do we find a discussion by the ALJ that explains why he rejected and did not include those limitations that we find in the medical record? Yes, Your Honor. What the ALJ did was he looked at the evidence as a whole. He looked at all of Dr. Thacker's treatment notes. And if you look at them, it's clear that Dr. Thacker did not intend to find that plaintiffs would have these limitations. He repeatedly advised plaintiffs to exercise regularly, 30 minutes a day, five days a week. The following month, after this treatment record, he advised plaintiffs to engage in cardiovascular exercise. And in March of 2015, the following year, he advised plaintiffs to be as active as possible with walking. And when you look at the records as a whole, it's clear that he found plaintiffs could engage in activity. And the ALJ not only looked at Dr. Thacker's notes, but he looked at Dr. Marjanov, who, by the way, Dr. Thacker referred plaintiffs to. And Dr. Marjanov looked at the three MRI scans and concluded that he also recommended conservative treatment. He found plaintiffs had a full range of motion in his cervical spine and a full motor strength in the upper and lower extremities. And after reviewing the MRI scans, all three of them, he found he recommended physical therapy and medication management. So we have a treating physician, a specialist, and we also have the opinion of a state agency reviewing physician, Dr. Norcross, who looked at all of the evidence, including the September 2014 treatment note of Dr. Thacker, and he also opined that plaintiffs could do sedentary work with postural limits. So I think it's clear when you read the evidence as a whole and you read the ALJ's decision, he wasn't isolating one sentence, as plaintiff wants you to do. He was looking at the record as a whole, which is what the ALJ is supposed to do when assessing the RFC. Do you agree an ALJ is supposed to do more than this when they reject a treating physician under the old rules? Well, Your Honor, it's our opinion that he didn't reject the treating physician's opinion. Simply because he didn't mention it doesn't mean he didn't consider it. Our position is that he considered Dr. Thacker's treatment notes. He didn't mention this one sentence, which is inartfully worded, by the way, and if you read it literally, it says, plaintiff is patient is restricted to work with machinery where he would be required to bend. That wouldn't eliminate any of the sedentary jobs that the ALJ found, and it's actually consistent with the ALJ's RFC, which doesn't require working with machinery. Yeah, neither doctor shines here on grammar and stating it. But isn't it true that Marianoff in fact confirms, because he says severe degenerative, I'll get his words, severe degenerative disc disease, which is the same thing that Thacker says? Yes. He said for the lumbar spine he did find severe degenerative disc disease. However, he still recommended physical therapy and pain management. And if you look at the record as a whole, we have his treating physician telling him to do cardiovascular exercise. We have a specialist telling him physical therapy. Even with the diagnosis of severe degenerative disc disease, it wasn't going to prevent him from doing sedentary work, which is the lowest level of exertion. And I take it from the briefing that the question in this case did not mention anything about working with machinery and bending forward or anything like that, right? No, Your Honor. We did mention it in our brief at the end. Our position is that the ALJ considered Dr. Thacker. Even if this court were to find that he didn't consider it, it would be harmless error. That's where we had our harmless error. We do not concede that the ALJ didn't consider Dr. Thacker, as plaintiff is suggesting. But at the end of my brief, I do mention the statement about plaintiff restricted to work with machinery. All right. Thank you. Moving on to the other issues about noncompliance, it's important to note here also that in addition to not being compliant with medication, plaintiff also was noncompliant with his doctor's treatment recommendations. The ALJ noted that plaintiff did not pursue physical therapy, even though Dr. Marjanov, a specialist, recommended it. And many times in the record, he was repeatedly advised to exercise regularly, cardiovascular exercise. And if you look at the September 2014 treatment note and his later treatment notes, it shows plaintiff gained weight. So he did not follow treatment recommendations. It's more than just the medication noncompliance. But do you agree with him that the medication noncompliances are with those other three items, the other three diagnoses, and they're not with pain, when you look at the references? Yes, Your Honor. He had the diabetes and the other hypertension, yes. Those are the ones he was noncompliant on, but the pain meds, as far as we can tell from the record, he was compliant on. Yes. And they appear to help, in fact. Yes, Your Honor. But I'd also like to note that the ALJ just considered noncompliance as one factor in his credibility analysis. He didn't rely on it solely to support RFC. If there are no other questions, we ask that you affirm the ALJ's decision as it is supported with substantial evidence, and thank you, Your Honors. Thank you. Mr. Wallace, have some time. There we go, for rebuttal. May it please the Court, I just have a couple of quick points on rebuttal. The Commissioner describes this sentence in Dr. Thacker's report regarding the bending, the inability to bend, as just a sentence. He says the ALJ doesn't need to isolate one sentence in his discussion. Well, if that sentence contains a specific limitation that might take the claimant out of sedentary work, we think he needs to discuss it. And even if we concede that the Commissioner is correct, that he looked at this and considered it, I think Judge Shepard made the point, and we would simply reinforce it, if he did consider it, where in his written decision is discussion of the weight that he gave it and the reasons that he gave that weight. Was the bending restriction anywhere in the treating physician's notes or whatever, other than in the sentence read by counsel, which seems pretty clearly linked to the machinery restriction? Well, let me address that. There are two places. There is one place where he says generally he cannot bend forward or backward. Is that in the same 563, 564 pages? Yes, those two pages. On 563 he says he cannot bend forward or backward. That's true. And on the next page he says that he is limited to not working with machinery where he requires the bend. Now, I think this is a particular application. Dr. Thacker had no cause to address whether Mr. Walker could bend or not doing sedentary work. Mr. Walker had never done sedentary work before. His work history was all something more than sedentary. So his doctor had no occasion to restrict him to sedentary work when that was not the kind of work that Mr. Walker had done. And it's our contention that this is just a single application of this general restriction on the inability to bend to the type of work that Mr. Walker did in the past. What about, and reference was made by counsel as a kind of a counterweight to any limitation that Dr. Thacker found, an anatomical limitation, the fact that the notes or records also recommend or order exercise? I see my time is up. May I answer that question? Thank you, Your Honor. This court has held that a doctor's prescription for exercise does not demonstrate that a claimant can perform work eight hours a day, five days a week. The Brosnahan case, which I believe we cited in our brief on that issue, 30 minutes a day of exercise does not demonstrate that he is not disabled. And yes, it's always, I've had back problems, doctors always want you to exercise in that regard to keep some movement. But the simple fact that he might be able to perform exercise for 30 minutes a day does not show that he can perform work for eight hours a day, five days a week. What about the fact, presiding judge's leave, what about the fact he doesn't exercise? Isn't that the point here? You did a case where they exercise and that's not used against them the other way, but here the case was he didn't exercise, right? Well, I don't think that's clear in the record. And if you notice what the government counsel said was, well, he must not have exercised because he still gained weight. Well, I'm not sure that there's a basis for that inference. You can exercise and still gain weight. So there's nothing in the record that says he wasn't exercising. Thank you, Your Honor. Thank you, counsel. Case has been very effectively and helpfully argued as well as briefed and we'll take it under advisement.